**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 25, 2023**

# In the Court of Appeals of Georgia

A23A0713. GALLEGOS-MUNOZ v. THE STATE.

PER CURIAM.

After a jury trial, Julio Cesar Gallegos-Munoz was convicted of child molestation and sentenced to 20 years to serve 19 in prison and the balance on probation. After the denial of his motion for new trial, Gallegos-Munoz filed the instant appeal in which he argues that the trial court erroneously excluded evidence of the victim's prior false allegation of sexual abuse. Finding no error, we affirm.

Viewed in favor of the verdict,[1] Gallegos-Munoz was arrested after the victim, his girlfriend's 12-year-old daughter, made an outcry to a school teacher that he had touched her breast and between her legs and raped her. The victim reported that the contact with Gallegos-Munoz had occurred twice. No physical evidence of injury or

---

[1] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

DNA evidence was found during the victim's physical exam. After speaking with the victim's mother, the police contacted the Department of Family and Children's Services, and the victim was removed from her home and placed in her biological father's custody. Gallegos-Munoz was interviewed by police and arrested and was later indicted on two counts of rape and one count of child molestation.

Prior to trial, the trial court held a hearing on Gallegos-Munoz's motion to admit evidence of prior false allegations that the victim had made against her biological father. The victim's mother and three police officers testified at the hearing. The mother testified that the victim told her that her biological father had touched her private parts. The following colloquy followed between the court and the mother:

Court: Who did she say that to?

Mother: She told me and she also made a police report. . . .

Court: What exactly did she tell you happened?

Mother: She said she was sleeping at her house and that she was sleeping in his bed and she was pretending to be asleep when he laid down next to her and touched her parts. . . . I told her that I would not allow her to go with her father until we knew what was going on. And when she decided to take out the police report, I told her that I would just support whatever she decided to do. . . . She called the police.

When asked if she had spoken to the police, the mother replied, "I only spoke to a detective once, and he said that we could not continue with the case because if the case was before a judge he would just throw out the case because there was not enough proof." The court then inquired, "When you had the conversation . . . , that was at the end of their investigation?" The mother replied: "The reality is that I don't know if there was an investigation done or not. He only called me once and just told me that there was not enough proof." When asked if the victim recanted, the mother replied that she had not, but the mother added that the victim did not respond at all the next time she asked her if the allegation was true. Finally, the mother testified that the victim's biological father denied the allegation.

The remaining witnesses were the officers involved when the victim made the initial outcry and in the instant case. With respect to the initial outcry, one officer testified that the mother told him that "the daughter was in counseling and they just wanted to handle it like that and not pursue any sort of criminal investigation regarding this incident." That officer recalled that the mother said nothing about whether her daughter had recanted or whether she believed her. During his testimony, the court clarified that none of the investigating officers involved actually talked to the victim and that no further investigation occurred. The next officer testified that he was told

3

that the family did not wish to proceed with the case and that he "unfounded" the report, as directed by his supervising officer, without talking to the victim or anyone in the family. The last witness to testify was the officer who investigated the instant case, and in the course thereof, asked the victim about the initial outcry. He testified that he spoke with her about the allegation involving her father and she said that she never knew what happened to that case, never talked to another officer after her initial report, and never wanted the charges dropped. She also told the officer that her family wanted her to drop the case and that it caused a strain on her relationships with her mother and other family members.

At the conclusion of counsel's argument at the hearing, the court denied the motion to admit the prior false allegation, finding there was no reasonable probability that the victim made a false allegation against her father and that the mother's testimony was not credible. In alignment therewith, it concluded the following in its written order:

> After hearing testimony of witnesses and arguments of counsel, the Court finds that there is no reasonable probability that the alleged victim's prior accusation concerning her own father was false, for the reasons noted by the Court in its oral ruling at the conclusion of the hearing. As the defendant was not able to establish with reasonable probability that the

4

alleged child victim made a prior false allegation of sexual misconduct against her father, the defense is barred from introducing such evidence. *Smith v. State*, 259 Ga. 135, 136-137 (377 SE2d 158) (1989); *Osborne v. State*, 291 Ga. App. 711, 712-713 (662 SE2d 792) (2008).

The trial proceeded, and the jury convicted Gallegos-Munoz of child molestation but was unable to reach unanimous verdicts on the rape counts.[2] Gallegos-Munoz filed a motion for new trial, in which he challenged the sufficiency of the evidence and the exclusion of evidence of a prior false allegation. The trial court denied his motion. This appeal followed, in which Gallegos-Munoz challenges only the exclusion of the prior false allegation.

The premise of Gallegos-Munoz's argument on appeal is that in light of *State v. Burns*, 306 Ga. 117 ( 829 SE2d 367) (2019), the trial court erred when it made a threshold determination about the falsity of the prior allegation rather than evaluating the admissibility of the evidence under Rule 403. Specifically, Gallegos-Munoz finds fault in the trial court's reliance on *Osborne*, supra, and *Smith*, supra, rather than *Burns*, supra, which overruled *Smith* in part. In *Burns*, a sexual offense case in which the victim admitted that her prior allegation of sexual abuse was false, id. at 118, our

---

[2] The rape charges were nolle prossed.

Supreme Court reexamined its holding in *Smith*. The *Burns* Court noted that it made both evidentiary and constitutional rulings in *Smith*, stating:

> We first held that, as a threshold matter, Georgia's Rape Shield Statute, as it then existed, does not prohibit testimony of previous false allegations by the victim because such evidence does not involve the victim's past sexual conduct but rather the victim's propensity to make false statements regarding sexual misconduct. We then held . . . that evidentiary rules preventing evidence of specific acts of untruthfulness must yield to the defendant's right of confrontation and right to present a full defense. In conclusion, we announced that evidence of a prior false allegation was admissible during trial following "a threshold determination made by the trial court outside the presence of the jury that a reasonable probability of falsity exists."

Id. at 118-119 (1) (citations and punctuation omitted). The Court went on to confirm that its "evidentiary holding in *Smith* [was] consistent with the decades-old plain language of the Rape Shield Statute and remains good law in the era of the new Evidence Code." Id. at 121 (2). In other words, the new Rape Shield Statute did not prohibit false allegation evidence. However, the Court found fault in its constitutional ruling. The Court explained that its constitutional ruling "seemingly relie[d] on the Sixth and Fourteenth Amendments to create a per se rule of admissibility for evidence of prior false allegations *where falsity has been established*, notwithstanding other

6

rules of evidence. These constitutional provisions demand[ed] no such rule." Id. (emphasis added). Without addressing the remaining viability of the evidentiary threshold determination set forth in *Smith*, the *Burns* Court ruled that OCGA § 24-4-403 did not pose a bar to the jury learning about the victim's admittedly false statement. Id. at 126 (3).

Since *Burns*, supra, this Court has repeatedly noted that the Supreme Court left unaddressed whether the threshold determination of the falsity of the statement should be determined by the trial court as a prerequisite to applying the Rule 403 balancing test. In *Vallejo v. State*, 362 Ga. App. 33 (865 SE2d 640) (2021), a whole court opinion with a split decision, we ultimately held that *Burns* did not overrule the threshold determination set forth in *Smith*. See id. at 38 (1). We noted that "[i]n *Burns*, the victim admitted that her prior allegation was false, and the Supreme Court therefore did not discuss whether the threshold determination requirement remains good law." *Vallejo*, 362 Ga. App. at 36 (1) (citation omitted). The issue arose again in *McNeil v. State*, 363 Ga. App. 548 (871 SE2d 303) (2022), where we remarked in a footnote:

> There is dissension in this Court as to the impact that the Supreme Court's decision in *Burns* had on the trial court's extra-statutory threshold procedure of finding a reasonable probability of falsity. See *Vallejo v. State*, supra. This case was tried prior to *Burns*; regardless, post-*Vallejo*,

the threshold requirement that the trial court first find a reasonable probability of falsity remains intact unless or until the Supreme Court says otherwise. See id.

Id. at 555 (3) (b), n.3. We acknowledged the threshold requirement again in *Matta v. State*, 363 Ga. App. 845 (872 SE2d 909) (2022) (prior sexual allegations excluded because there was no evidence of their falsity). Most recently, in *State v. Ray,* 367 Ga. App. 329 (884 SE2d 414) (2023), another case where there was evidence of falsity of the prior sexual allegations, we remanded the case to the trial court to employ the Rule 403 balancing test. In that case, we noted yet again the "lack of clarity in the law after *Burns* as to whether the trial court must first find a probability of falsity of prior sexual abuse allegations before moving on the Rule 403 balancing test to determine whether this kind of evidence is admissible." *Ray*, 367 Ga. App. at 332, n. 3.

It is our duty to apply existing precedent. The threshold requirement that a trial court must first find a reasonable probability of falsity before admitting evidence of prior false allegations remains intact. Accordingly, the trial court did not err when it made its threshold determination, and consequently, we affirm the judgment below.

*Judgment affirmed. Division Per Curiam. All Judges concur.*

8